## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**CALEB CRABTREE** *and* **ADRIANE CRABTREE,** *as Assignees of the Claims of Casey Cotton*                                **PLAINTIFFS**

**v.**                        **CIVIL ACTION NO. 1:21-cv-399-TBM-BWR**

**ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY**                        **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Caleb and Adriane Crabtree have sued Allstate Property and Casualty Insurance Company seeking compensation for a severe accident they suffered at the hands of Casey Cotton. But this is not your typical bad faith case. To be sure, the Crabtrees are suing Allstate based on purported bad faith contract claims that Cotton allegedly had against Allstate, his insurer. For standing to move forward, the Crabtrees claim they received Cotton's bad faith claims via an assignment from Cotton.

Allstate has moved for dismissal of this case arguing that the assignment is invalid. Allstate is correct. The assignment was null because the Crabtrees were assigned the claims by a third party before the third party had received them from Cotton. This case is dismissed without prejudice.

## I. BACKGROUND

### A. Factual and Procedural History

In September of 2018, Casey Cotton rear-ended the Crabtrees' car. Cotton was allegedly driving over seventy-five miles per hour just before impact, and Caleb Crabtree was hospitalized. [14], pp. 3-5. Allstate insured Cotton, and over the next four months the Crabtrees' counsel attempted to obtain a settlement from Allstate. [14], p. 4-9. The negotiations proved unfruitful,

and the Crabtrees sued Cotton in the Circuit Court of Lamar County, Mississippi. [14], p. 9; [14-15], p. 1.

Cotton filed for bankruptcy in March of 2021 though. [94], p. 5; [14], p. 9. As a result, the Crabtrees were concerned they could be unsecured creditors of Cotton's. This meant that while they could sue Cotton and get a jury verdict, they may ultimately receive little or nothing after the Bankruptcy Trustee sorted out Cotton's debts. The Crabtrees, believing they had a potential lawsuit worth a large sum of money, objected to Cotton's attempted bankruptcy discharge. [14-23], p. 3.

The Bankruptcy Trustee resolved the Crabtrees' objection by agreeing to assign them any potential bad faith claim Cotton had against Allstate arising from the accident. [14-23], p. 4. As part of that agreement, the Crabtrees also consented to have whatever verdict they obtained against Cotton treated as among the lowest priority of his debts. [14-23], pp. 4-5. The Crabtrees also agreed to pay $10,000 for the claim against Allstate. [14-23], p. 4. However, the Crabtrees did not have $10,000. To get the funds, the Crabtrees entered into an agreement with a third party, Court Properties, Inc. [14-19], p. 1. On October 25, 2021, the Crabtrees signed an agreement providing that Court Properties would pay the Bankruptcy Trustee the $10,000 and in return Court Properties would receive a promissory note from the Crabtrees which entitled it to $10,000 plus interest if the Crabtrees recovered over $100,000 from Allstate. [60-11]. The agreement also included a document executed by Court Properties assigning Cotton's claim to the Crabtrees. [14-19], p. 1.

On November 5, 2021, eleven days after Court Properties executed that assignment of Cotton's claim to the Crabtrees, Court Properties paid the Bankruptcy Trustee the $10,000 and

the Bankruptcy Trustee assigned Cotton's claim to Court Properties. So the Crabtrees executed an assignment for receipt of the claim from Court Properties before Court Properties actually executed the assignment to receive the claim itself. The Crabtrees brought this federal suit against Allstate in December of 2021.

With the bankruptcy issues resolved, the Crabtrees' state court suit proceeded, and in January 2022 the jury returned a verdict against Cotton in excess of $4.6 million. [14-25], pp. 1-2.

Within two months of the Crabtrees filing this federal court suit, Allstate moved for both judgment on the pleadings and summary judgment. [19] & [50]. It argued, among other points, that the assignments from the Bankruptcy Trustee to Court Properties and from Court Properties to the Crabtrees were void because they violated Mississippi's law against champerty. [20], pp. 2, 14-15; [51], p. 22. This Court denied the motions without prejudice at a hearing on July 13, 2022, to allow for a more fully developed record. [80].

The next month, Allstate filed a new Motion to Dismiss for Lack of Jurisdiction, Motion for Summary Judgment. [84]. In addition to a renewed champerty argument based in part on a more complete record, Allstate asserted that the Crabtrees had not actually been assigned anything because Court Properties executed its assignment of Cotton's claims to the Crabtrees before Court Properties had received the claims from the Bankruptcy Trustee. In an attempt to cure this alleged deficiency, Court Properties executed a second assignment to the Crabtrees in September of 2022. [93-10].

## B. Champerty & Maintenance

Some background discussion about champerty is helpful. Prior to the 1800s, "with only limited exceptions, English courts refused to recognize assignments [of causes of action] at all."

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 275, 128 S. Ct. 2531, 171 L. Ed. 2d 424 (2008). Allowing assignments "the courts feared, would lead to the 'multiplying of contentions and suits,' and would also promote 'maintenance[.]'" *Id.* at 275-76 (internal citations omitted). Historically, maintenance was the criminal offense of "helping another prosecute a suit." 14 C.J.S. *Champerty and Maintenance* § 4 (2022). The individual helping prosecute the suit may do it for free, but champerty is the specific subset of maintenance where an individual helps maintain "a suit in return for a financial interest in the outcome." *Id.* § 1.

Over time both the United States and the United Kingdom recognized the commercial utility of assignments and relaxed the strict prohibition against it while still maintaining champerty laws. *See Sprint Commc'ns*, 554 U.S. at 276-81. These champerty laws still exist in many jurisdictions and are commonly "aimed at the prevention of multitudinous and useless lawsuits and at the prevention of speculation in lawsuits." 14 C.J.S. *Champerty and Maintenance* § 4. They stop "strangers having no pretense of right to the subject of a lawsuit" from meddling in that lawsuit. *Id.* But generally "if a party has an interest independent of and prior to the allegedly champertous arrangement, or the possibility of an interest in the subject litigated, an agreement to carry on the litigation . . . is not champertous." *Id.* at § 14.

Today, Mississippi has a single statute criminalizing champerty and maintenance. *See* MISS. CODE ANN. § 97-9-11. The champerty and maintenance statute bars, among other actions, any person, firm, partnership, or corporation from promising, giving, or offering money "as an inducement to any person to commence or to prosecute further, or for the purpose of assisting such person to commence or prosecute further, any proceeding in any court[.]" MISS. CODE ANN. § 97-9-11.

4

## II. ANALYSIS

Allstate raises two arguments in its latest motion. First, Allstate says that the assignments were champertous and therefore void. Next, Allstate asserts that even if the assignments were not void, at the time this federal lawsuit was filed in December of 2021, the Crabtrees had not been assigned Cotton's claims because Court Properties executed the assignment before the Bankruptcy Trustee actually assigned Cotton's claim first to Court Properties. In either case, Allstate asserts the Crabtrees lack prudential standing. But, unsure of whether or not prudential standing is jurisdictional, Allstate makes these arguments in both a motion to dismiss for lack of subject-matter jurisdiction and a motion for summary judgment.

### A. Standing and Jurisdiction

First, is Allstate's standing argument jurisdictional or not? "The doctrine of standing asks 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013) (quoting *Elk Grove Unified Sch. Dist. v Newdow*, 542 U.S. 1, 11 (2004) (abrogated by *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014))). "The Supreme Court has described standing as 'contain[ing] two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement; and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction.'" *Id.* Article III standing requires that a plaintiff

> establish: (1) an injury in fact (*i.e.*, a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (*i.e.*, a '"fairly . . . trace[able]"' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is '"likely"' and not 'merely "speculative"' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Sprint Commc'ns*, 554 U.S. at 273-74.

The Fifth Circuit has stated as recently as this year that "prudential standing does not present a jurisdictional question," *Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022). Fortunately for Allstate though, this Court believes that the assignment issue Allstate has identified is both an Article III standing issue and a prudential standing issue.

In *Sprint Communications*, the Supreme Court provided an in-depth analysis explaining how a proper, legal assignment of a claim imbues the assignee with Article III standing. *Sprint Commc'ns*, 554 U.S. at 285-87. Therefore, an assertion that a plaintiff was not properly assigned a claim raises an Article III standing question if the assignment is the only ground on which the plaintiff asserts standing. *See United States v. Currency Totalling $48,318.088*, 609 F.2d 210, 213-14 (5th Cir. 1980) (finding that an assignment that did not meet every legal requirement could not provide standing); *Bruning v. Attmore*, No. 20-50772, 2022 WL 885123, *1 (5th Cir. Mar. 25, 2022) (unpublished) (discussing assignment as means of establishing standing.); *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 14-CV-10116 (VSB), 2020 WL 1285783, *10 (S.D.N.Y. 2020) ("Both Supreme Court and Second Circuit precedent indicate that the lack of valid assignments . . . would in fact deprive Plaintiffs of both Article III and prudential standing.").

"The party invoking federal jurisdiction bears the burden of establishing [standing.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). After examining the Crabtrees' complaint and response to Allstate's Motion, the Crabtrees only ground for asserting Article III standing is the assignment. Thus, by challenging the validity of the assignments, Allstate has raised an Article III standing issue and a jurisdictional question.

**B. Mississippi's Champerty Law**

Here, Allstate asserts that the Crabtrees do not possess Cotton's claims because the initial assignment to Court Properties was champertous. Allstate takes the position that because Court Properties is a stranger to this lawsuit it could not be assigned the suit without committing champerty. They protest that the Bankruptcy Trustee should have directly assigned the suit to the Crabtrees. According to its argument, Court Properties' champertous act voids the assignment agreement, and the Crabtrees received nothing when Court Properties attempted to assign the claim to them.

Allstate focuses on Mississippi's statute criminalizing champerty and maintenance to make this argument. As stated above, that statute bars giving money or receiving a cause of action in order to assist a "person" in commencing or prosecuting "any proceeding in any court[.]" MISS. CODE ANN. § 97-9-11. That statue may also require that the assistance take the form of an "inducement". *Id.* But Allstate's argument essentially ignores another Mississippi statute entitled "Exceptions to maintenance." MISS. CODE ANN. § 97-9-23. This statute states that "[n]othing in Sections 97-9-11 through 97-9-23 is intended to be in derogation of the constitutional right of real parties in interest to employ counsel or to prosecute *any* available legal remedy." MISS. CODE ANN. § 97-9-23 (emphasis added).

If this Court were to interpret these statutes, it would have to make an *Erie* guess at how the Mississippi Supreme Court would interpret them. This is because, to date, the Mississippi Supreme Court has not definitively interpreted these statutes and their application to the facts before this Court. That guess would require this Court to look to: (1) Mississippi Supreme Court decisions in similar cases, (2) the Mississippi Supreme Court's reasoning and analysis in related

cases, (3) Mississippi Supreme Court dicta, (4) decisions of other Mississippi state courts, (5) the general rule on the question, (6) the rulings of others courts to which the Mississippi Supreme Court looks, and (7) treatises and legal commentaries. *Terry Black's Barbecue, L.L.C. v State Auto. Mut. Ins. Co.*, 22 F.4th 450, 455 (5th Cir. 2022).

But, when a state statute governs the result, a court's "first stop (and usually [its] last) is the statutory text. 'Text is the alpha and omega of the interpretive process.' " *Weatherly v. Pershing, L.L.C.*, 945 F.3d 915, 921 (5th Cir. 2019) (quoting *Reed v. Taylor*, 923 F.3d 411, 415 (5th Cir. 2019)). This Court would first and foremost have to grapple with the actual elements required for champerty in Mississippi under the plain text of the statute.[1] Further, this Court would have to consider whether the exception applies, as Allstate concedes that the Crabtrees are real parties in interest. What is more, the Mississippi Supreme Court has stated that, in the context of interpreting the champerty statute, a "defendant cannot avail himself of the champertous agreement as a defense to the action." *See Sneed v. Ford Motor Co.*, 735 So. 2d 306, 315 (Miss. 1999) (quoting *Calhoun Cnty. v. Cooner*, 118 So. 706, 707 (1928)).

Ultimately though, this Court takes no opinion on these questions because there is a superseding dispositive issue.

## C. The Timing of the Assignments

Allstate also asserts that the Crabtrees never received Cotton's cause of action because the assignments were out of order. It is axiomatic that "an assignee stands in the shoes of the assignor"

---

[1] The Court notes that the champerty and maintenance statute, and its exception, was enacted in 1956 and has been amended twice, once in 1976 and again in 2013. MISS. CODE. ANN. §§ 97-9-11, 97-9-23. Mississippi also has several statutes governing assignments, *see* MISS. CODE. ANN. §§ 11-7-3, 11-7-7, and while these have been amended within the last thirty years, these predate the enactment of the champerty and maintenance statute by almost fifty years. *See* MISS. CODE. ANN. § 717 (1906); 1902 Miss. Laws ch. 69; 1916 Miss. Laws ch. 134. Any *Erie* guess would also have to examine any potential conflict between the permissive assignment statutes and the champerty statute.

and "obtains only the rights possessed by the assignor at the time of the assignment, and no more."
6A C.J.S. *Assignments* § 111 (2022); *see also Currency Totalling $48,318.08*, 609 F.2d at 214; *Fed. Deposit Ins. Corp. v. Bledsoe*, 989 F.2d 805, 810 (5th Cir. 1993); *Ford v. White*, 495 So. 2d 494, 497 (Miss. 1986); *Wells v. Edwards Hotel & City Ry. Co.*, 50 So. 628, 629 (Miss. 1909); *Yazoo & M.V.R. Co. v. S.B. Wilson & Co.*, 35 So. 340, 341 (Miss. 1903). Based on the undisputed facts before this Court, when the Crabtrees filed this suit in December of 2021, they had not been assigned Cotton's claim by Court Properties. That did not occur until September of 2022, roughly nine months after filing. [93-10]. Therefore, the Crabtrees had not received the cause of action against Allstate until after they brought this suit.

Subject-matter jurisdiction, including Article III standing, is evaluated at the time the suit is filed. *Pluet v. Frasier*, 355 F.3d 381, 385-86 (5th Cir. 2004) (citing *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1288 (5th Cir. 1992)). Because the Crabtrees only base their Article III standing claim on the assignments and not any other independent evaluation of the standing factors, they lacked Article III standing to bring this suit. Consequently, this Court lacks subject-matter jurisdiction over this suit.

## D. The Crabtrees' Request for Leave to Amend

At the conclusion of their response, the Crabtrees ask leave to amend their complaint to cure any standing defects. Though amendment to cure prudential standing issues can generally be proper, *Abraugh*, 26 F.4th at 304-05, as noted above subject matter jurisdiction is evaluated at the time of filing suit. And it is undisputed that, at the time of filing suit, the Crabtrees had no cause of action against Allstate.

To be sure, some federal circuits allow a plaintiff to amend its "complaint to cure an Article III standing defect by alleging facts that arose after the filing of the original complaint." *Cohan v. TMBC, LLC*, Civil Action No. 18-1072-BAJ, 2019 WL 2169185, *2 n.4 (M.D. La. May 17, 2019). The D.C. Circuit has even observed that a circuit split currently exists over this amendment question. *See Scahill v. District of Columbia*, 909 F.3d 1177, 1183 (D.C. Cir. 2018) (compiling cases). Regardless, it is this Court's responsibility to apply the law as interpreted by the Fifth Circuit.

While at least one of our sister courts has held that this is an open question in the Fifth Circuit, *see Cohan*, 2019 WL 2169185, *2 n.4, this Court reads Fifth Circuit precedent as foreclosing the issue of amendment. In 2011 the Fifth Circuit considered *Rockwell International Corp. v. United States*, 549 U.S. 457, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007), the Supreme Court case undergirding the rationale proposed by some circuits for allowing amendment. The Fifth Circuit said, "*Rockwell* did not speak to the question whether a relator can use an amended complaint to establish jurisdiction when the original complaint is lacking. Consequently, we fall back on the longstanding rule that the amendment process cannot 'be used to create jurisdiction retroactively where it did not previously exist.'" *United States ex. rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 328 (5th Cir. 2011). This Court is bound by the decisions of the Fifth Circuit and so will apply this precedent.

Therefore, the Crabtrees' request for leave to amend will be denied, and this suit will be dismissed without prejudice for lack of jurisdiction. *See Pluet*, 355 F.3d at 386.

### III. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Allstate's Motion to Dismiss for Lack of Jurisdiction, Motion for Summary Judgment [84] is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that the Crabtrees' request for leave to amend is DENIED and this matter is DISMISSED WITHOUT PREJUDICE.

THIS, the 19th day of December, 2022.


_____
TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE